UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| J & J Sports Productions, Inc., ) <br> ) <br> Plaintiff, ) <br> ) <br> -vs- ) <br> ) <br> Urania Elizabeth Segura a/k/a Urania E. ) <br> Segura, doing business as Herradura Sports ) <br> Bar & Grill, ) <br> ) <br> Defendant. ) <br> _____) | C/A No.: 3:12-cv-03241-CMC <br><br> **OPINION AND ORDER <br> ON MOTION FOR <br> DEFAULT JUDGMENT** |

Plaintiff, J & J Sports Productions, Inc. ("Plaintiff"), which had exclusive, nationwide commercial television distribution rights to *"Tactical Warfare": Manny Pacquiao v. Antonio Margarito, WBO Light Middleweight championship Fight Program*,[1] ("the Program"), sued Urania Elizabeth Segura a/k/a Urania E. Segura, doing business as Herradura Sports Bar & Grill ("Defendant") for exhibiting the November 13, 2010, commercial broadcast of the Program, which included under-card bouts and commentary, without paying the required licensing fee to Plaintiff. Plaintiff's Complaint included causes of action under 47 U.S.C. § 605 ("Communications Act") and 47 U.S.C. § 553 ("Cable & Television Consumer Protection and Competition Act"), as well as a state-law claim for conversion. Although Defendant was properly served with the Complaint, she has not answered or filed any responsive pleading.

Pursuant to Plaintiff's request, the Clerk of Court entered default against Defendant. Dkt. Nos. 6, 7. Plaintiff then moved for a default judgment and an award of attorneys' fees and costs under the Communications Act claim, conditionally waiving other claims. Dkt. No. 9. This motion

---

[1] The first competitor's name is listed in some documents as "Manny Pacquiao" and in others as "Many Pcquiao." The correct spelling appears to be Manny Pacquiao.

was served on Defendant. Dkt. No. 9-8. No response has, however, been filed despite passage of the deadline for doing so. For the reasons set forth below, the motion is granted.

## PROCEDURAL MATTERS

Although the court does not find that they preclude entry of judgment, the court notes several technical errors in Plaintiff's filings. First, this matter was incorrectly filed in the Columbia Division despite clearly involving events which occurred in the Greenville Division. Second, the motion for default judgment, while naming the correct Defendant and location, refers to showing of a different program on a different date at a different business and location. *See* Dkt. No. 9 at 2 ¶¶ 4.A, 4.B. Finally, the body of the memorandum incorrectly asserts that an attached declaration of an eye witness supports finding that the bar had a capacity of and, at the relevant time, held a specified number of patrons.

**Divisional Venue.** Had Defendant raised the divisional venue issue or had the court recognized the error earlier, it would likely have transferred the matter to the Greenville Division. However, given the stage of the proceedings, the absence of objection, and the resolution of the matter through non-jury proceedings, the court proceeds with only a reminder to counsel that divisional venue is governed by Local Civil Rule 3.01, D.S.C., which should be followed as to any future case filing.[2]

**Scrivener's Errors.** The errors in the motion (referring to a different broadcast on a much earlier date at a different business in a different city), appear to be scrivener's errors. Although these errors could be misleading viewed in isolation, other content of the motion and supporting

---

[2] Plaintiff has previously sued the same Defendant in the Greenville Division for a similar offense: unauthorized broadcast of a fight program at the same location on March 13, 2010. *See J&J Sport Productions, Inc. v. Segura*, C.A. No. 6:11-cv-01458-GRA.

memorandum clarify the facts underlying the claim and the Defendant to whom the matter is directed.  For example: the correct Defendant and business are named in the caption and the text on the first page of the motion; the correct identification of the Program and date appear on the first page of the contemporaneously filed and served memorandum and elsewhere in the body of that document; and supporting documents attached to the motion and memorandum, likewise, clarify the entity, location, and program at issue.  The court, therefore, concludes that these errors, while causing some confusion, would not have misled Defendant as to the need to respond to the motion for default judgment.

**Misstatement as to Supporting Declaration.**  The motion also states that "an eyewitness has established that 70 patrons witnessed the Program" and refers to "the capacity of the bar of approximately 70 persons."  Dkt. No. 9-1 at 7 (citing "Declaration of Affiant"); *id.* at 8 (not citing a source).  The declaration of the investigator, on which these statements presumably rely, does not refer either to the capacity of the business or the number of persons present.  *See* Dkt. No. 9-4.

As with the errors addressed above, these misstatements would not have misled Defendant as to the need to respond to the motion.  They also have no substantive effect given that the rate card on which the court bases its calculation of statutory and enhanced damages reflects one rate applicable to businesses with a capacity of zero to one hundred patrons.

## LIABILITY

Liability has been established by Defendants' default.  *See* Dkt. No. 7 (February 15, 2013 entry of default).

## DAMAGES

As liability has been established by Defendants' default, and Plaintiff has waived its other claims, the only issues remaining for resolution are the amounts of damages, attorneys' fees and

costs to be awarded for Defendant's violation of 47 U.S.C. § 605. Based on Plaintiff's written submissions, to which no opposition has been filed, the court makes the following findings of fact and reaches the following conclusions of law with respect to these issues.

1. Defendant is in default and has, by virtue of her default, admitted all factual allegations in the Complaint.

2. Those allegations include allegations that (a) Defendant, without authorization, intercepted a broadcast of a fight program to which Plaintiff held the rights, (b) displayed that fight to patrons in a commercial establishment, and (c) did so knowingly and willfully and for commercial gain.

3. In addition, Plaintiff alleges and Defendant, by defaulting, has admitted that she bore personal responsibility for the display of the program and is liable individually and as officer, director, shareholder and/or principal of the business at which the Program was displayed.

4. The rate that Defendant would have paid to lawfully display the Program to her patrons was a minimum of $2,200 (the rate charged for businesses with a seating capacity of 0 to 100). *See* Dkt. No. 9-3 at 10 (rate sheet).

5. No other evidence of aggravating factors has been presented. Neither has the court been presented with evidence of the capacity of the business such as might support a higher rate.

6. In order to have a deterrent effect, the court finds that the amount of the statutory damage award under subsection 47 U.S.C § 605(e)(3)(C)(i)(II) should be double the amount that would have been paid. Thus, the court awards $4,400 as statutory damages.

7. In addition, the court awards enhanced damages of $6,600 under 47 U.S.C § 605(e)(3)(C)(ii) due to the willful and knowing nature of the piracy.

8.  The court awards attorneys' fees in the amount of $1295.[3] It also awards costs in the amount of $ 1,004.32.[4] Both the award of attorneys' fees and costs are pursuant to 47 U.S.C § 605(e)(3)(B)(iii).

WHEREFORE, the court directs entry of judgment against Defendant in the total amount of $13,299.32, representing all damages, costs and attorneys' fees.

IT IS SO ORDERED.

                                        s/ Cameron McGowan Currie
                                        CAMERON MCGOWAN CURRIE
                                        UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
March 22, 2013

---

[3] Plaintiff's fee request included $71.25 for work by an administrative assistant. The amount awarded excludes the fees for this work. While the court awards fees for work done by Mr. Riley and his paralegal, it does not rely on the Laffey Matrix, which is not representative of rates for work in this jurisdiction, in approving the rate charged. *See*, *e.g.*, *Rum Creek Coal Sales, Inc., v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994) (advising courts to base awards on the "prevailing market rates in the relevant community"). The court, nonetheless, finds the fees sought for Mr. Riley's work ($40 for one-tenth of an hour's work) and his paralegal ($95 for .95 hours of work) reasonable in light of the minimal time for which fees are sought, the nature of the work, and the court's knowledge of rates normally charged for similar work in this district.

[4] Plaintiff sought $1004.32 in costs. The costs sought include fees of $350 (filing fee) and $175 (service of process) supported by local counsel's affidavit (Dkt. No. 9-6). They also include other costs listed in the declaration of Thomas P. Riley, Esq., which lists pre-suit investigative costs (listed as $575 in ¶ 2 but $460.50 in ¶ 11), miscellaneous expenses (listed as $22.86 in ¶ 5 but $18.82 in ¶ 11), and repetition of the amounts for filing fees and an advance for service fees. The amount actually sought and awarded equals the lower amounts listed for investigative and miscellaneous expenses and does not include any duplication.